The State v. Parmenter.

---

The State of Kansas v. Charles Grayson Parmenter.

No. 13,726.   (79 Pac. 123.)

SYLLABUS BY THE COURT.

1. Practice, District Court—*Change of Venue.*   The fact that a large number of the inhabitants of the county may be prejudiced against the defendant will not justify a change of venue on the ground of local prejudice if the remainder of the people of the county are free from prejudice and the defendant may still have a fair trial within the county.

2. ———— *Prejudice of Trial Judge.*   The prejudice of the judge, which is made a statutory ground for change of venue in a criminal case, refers to his prejudice against a party, and not to an opinion that the judge has formed, or is believed to entertain, upon a legal question arising in the case.

Appeal from Bourbon district court;   Walter L. Simons, judge.   Opinion filed January 7, 1905.   Affirmed.

*C. C. Coleman,* attorney-general, *C. B. Griffith,* county attorney, and *J. M. Humphrey,* for The State.

*J. I. Sheppard,* and *A. L. H. Street,* for appellant.

33—70 KAN.

The opinion of the court was delivered by

JOHNSTON, C. J. : Charles Grayson Parmenter, who killed Frank T. Bruner, was prosecuted upon a charge of murder in the first degree, convicted of murder in the second degree, and sentenced to the penitentiary for a term of thirteen years. Upon his appeal he complains of rulings made upon applications for change of venue. He first applied for a change to a county other than Bourbon, where the homicide occurred, because of the prejudice of the people of that county against him. As manifestations of local prejudice he showed that after the preliminary examination the officers, fearing mob violence, removed him to the jail of an adjoining county, and also that full accounts of the tragedy had been published in the local papers.

In support of his application appellant filed many affidavits of people of Fort Scott, where Bruner was killed, and of some residing in other parts of the county, that prejudice existed against Parmenter, and that in their opinion a fair trial could not be had in the county. In most of them there was a statement to the effect that for years Parmenter had been accused of open and notorious violations of the prohibitory liquor law, which affiant believed had caused a deep-seated prejudice against him in the minds of the people. Numerous residents of the county, many of whom lived outside of Fort Scott, testified in behalf of the state to the effect that no prejudice of which they were aware existed against the defendant, and that in their judgment he could have a fair trial in the county. There was testimony, also, that the excitement created by, and which immediately followed, the homicide had subsided and that outside of a few

The State v. Parmenter.

friends of the deceased Bruner the people were desirous that a fair and impartial trial be given to the defendant.

The fact that a part or a large number of the people of a county may be prejudiced against the defendant does not warrant a change of venue, if the other residents are free from prejudice and the defendant may still have a fair and impartial trial in the county. It is not enough that prejudice against the defendant exists; but, as the statute provides, it must exist to such an extent "that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair trial cannot be had therein." (Crim. Code, § 174; Gen. Stat. 1901, § 5616.) In Fort Scott, and the immediate vicinity, many of the people may have been disqualified to act as jurors; but that city is on the eastern border of the county, and witnesses living fifteen to twenty miles from the city said that in their communities they found no prejudice against the defendant. It does not appear that any difficulty was experienced in obtaining an unprejudiced and qualified jury in the county, and no complaint is made of the jury that tried him, or of the verdict which they returned against him. The numerous statements that he had been charged with violations of the prohibitory liquor law do not go far to establish prejudice. Opposition to the business in which he may have been engaged is not necessarily antagonism to him, although the business is illegitimate; at least, it is not the equivalent of disqualifying prejudice.

In passing upon this phase of the case, and the condition of local sentiment in the county, the trial court remarked:

"Everybody knows that it is more difficult to con-

vict a man in this district of selling liquor than to convict him of murder. He gets more lawyers to defend him ; raises more points and carries more juries on a trial for violating the prohibitory law than he will for murder. I do not believe that any man is ever unpopular here in Fort Scott because he violates the prohibitory liquor law. . . . I do not think there is any danger of his not getting a fair trial on that account. I think there would be no class of men who would be so safe on prosecution ; that any of the rest of us would be in more danger of not getting a fair trial than the man who violates the prohibitory law.''

A change of venue works delay, enhances expense, and is deemed to be a wrong to the public unless justice to the defendant requires it. Before a change can be granted it must affirmatively appear that such prejudice exists as will be reasonably certain to prevent a fair trial. The evidence as to local prejudice in this case was conflicting. That conflict, like others arising upon facts, is for the trial court to determine. In doing so the court is vested with discretion, and, aside from the presumption that the discretion was not abused, and that the question was correctly decided, there appears to be abundant evidence to sustain the ruling made by the court. ( *The State v. Bohan*, 15 Kan. 407 ; *Tⁿe State v. Bohan*, 19 id. 28 ; *The State v. Furbeck*, 29 id. 532 ; *The State v. Daugherty*, 63 id. 473, 65 Pac. 695.)

After the refusal application was made for a change of venue to another district on the ground that the judge was prejudiced against the defendant. The charge of prejudice in the mind of the judge was based mainly on his denial of the previous application for a change of venue, and upon some other preliminary rulings in the case. These rulings, even if they had been erroneous, did not afford grounds for

the change.   ''Errors of judgment do not amount to prejudice or ill will on the part of a judge.   The theory of our judicial system is, that courts of *nisi prius* may commit errors of judgment in matters of law, which are to be reviewed by courts of last resort ; but such errors have never been held equivalent to prejudice.''   (*The State v. Bohan*, 19 Kan. 28, 52.)

The prejudice of the judge, which is made a statutory ground for a change of venue, refers to the prejudice against a party, and not to an opinion that the judge has formed, or is believed to entertain, upon a legal question arising in the case.   Nothing in the rulings made, or in the language of the judge in making them, indicates any prejudice against the defendant.   Indeed, it appears that the judge had no personal acquaintance with him.   In a full and dispassionate statement of his relation to the defendant and to the case, the judge, among other things, said :

''I am not conscious of having the least prejudice against the defendant, and I know of no reason why I should have.   .   .   .   So far as weak humanity can follow in the footsteps of divinity, every accused person shall have a fair trial before me, as I hope to have a fair trial before the higher and perfect tribunal before which we must all sooner or later appear.   I am unable to grant the application without violating my official oath, by finding a fact to exist which I am satisfied does not exist.''

Complaint is made of refusal of a motion for a continuance.   The application was based chiefly on the ground that the defendant had not had sufficient time and opportunity to prepare for trial.   The killing occurred on November 12, 1902.   The preliminary examination was held on November 22.   The case was called for trial at the following term of court, on January 5, 1903, and after some preliminary matters

were disposed of the application for a continuance was made on January 19, 1903, and, although denied, the case was not set down for trial until the 2d day of February, 1903 ; and thus fourteen days' additional time was given the defendant for preparation.    The granting of a continuance. rests largely in the discretion of the trial court, and it is manifest that there was no abuse of such discretion in this case.    The same may be said of the ruling allowing the name of a witness to be indorsed on the information at the time of trial, of which complaint is made.

No attack is made on the proceedings at the trial, or upon the verdict or sentence.

The judgment of the district court is affirmed.

All the Justices concurring.