No. 44,147

THE STATE OF KANSAS, *Appellee*, v. GEORGE D. POULUS, *Appellant*.

(411 P. 2d 694)

Opinion filed March 5, 1966.

*T. M. Murrell*, of Topeka, argued the cause, and *George A. Scott, Jack A. Quinlan* and *Kay McFarland*, of Topeka, and *Charles D. Anderson* and *Warner Moore*, of Wichita, were with him on the briefs for appellant.

*Keith Sanborn*, County Attorney, of Wichita, argued the cause, and *Robert C. Londerholm*, Attorney General, of Topeka, and *Richard K. Hollingsworth*, Deputy County Attorney, and *A. J. Focht*, Deputy County Attorney, of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant, George D. Poulos, has appealed from a judgment rendered on a jury verdict finding him guilty of third degree arson in violation of K. S. A. 21-583 and subornation of perjury in violation of K. S. A. 21-702, 21-703 and 21-704.

In seeking reversal, the defendant briefs and argues three points: First, that the district court erred and abused its discretion in not granting him a change of venue, and in not permitting Judge Howard C. Kline to testify on behalf of the defendant; second, that the district court erred in permitting Jack Flournoy to testify over the objection of the defendant, and third, that the district court erred in not granting the defendant a new trial.

Briefly summarized, the information filed in the district court charged that commencing prior to April 12, 1962, and continuously thereafter until April 24, 1963, the defendant Poulos, Rex Rudolph Conn, James H. Dolan and Eugene Reuben McCroskey unlawfully and feloniously conspired to commit the crime of arson in the third degree by willfully setting fire to and burning a Lockheed Lodestar

airplane valued at approximately $13,500, by placing a small satchel containing an explosive charge and fuse beneath the under surface of the airplane, and causing this device to explode and set fire to and burn the airplane. The second count charged the defendants with a conspiracy over the same period to conceal the arson offense alleged in Count 1 by using force and threats of force to intimidate Paul R. Luttrell to commit willful and corrupt perjury in a proceeding by which Luttrell falsely swore that Rex Rudolph Conn was in his presence at the time of the destruction of the airplane.

Subsequent to the filing of the information in the instant case, another information was filed in the district court charging the defendant Poulos and Rex Rudolph Conn jointly, with burglarizing the Town House Motor Hotel, Inc., in Wichita, in July, 1962, and with the larceny of four television sets therefrom. Subsequently, and on March 6, 1965, the defendant was convicted by a jury of those offenses and he has appealed, which is case No. 44,253, *State v. Poulos*, 196 Kan. 287, 411 P. 2d 689.

On September 24, 1964, and prior to a trial on the charges contained in both informations, the defendant filed identical motions for change of venue in each case pursuant to K. S. A. 62-1318 and 62-1319. On October 2, 1964, both motions for change of venue came regularly on for hearing in division No. 5, before Judge James J. Noone and Judge James V. Riddel, Jr., sitting in banc. After hearing evidence offered by the defendant and considering counter affidavits offered by the state, the judges, acting concurrently, denied each motion.

The instant case proceeded to trial on October 26, 1964, and ended on November 5, 1964, with the jury finding the defendant guilty as charged in Counts 1 and 2 of the information. The defendant's motion for a new trial was heard on November 19, 1964, and overruled. On November 23, 1964, the defendant was sentenced as a habitual criminal under the Habitual Criminal Act (K. S. A. 21-107a) on each count for a term of not less than fifteen years, the sentences to run concurrently.

Turning to the questions argued on this appeal, the defendant contends the district court erred in refusing to grant his motion for a change of venue. His motion contained the same language as the motion in case No. 44,253, and alleged the defendant could not obtain a fair trial in Sedgwick County for two reasons: First, that the inhabitants of the county were prejudiced against him, and second, that because he had been given widespread publicity

through newspapers circulating in the county and through radio and television broadcasts of a derogatory nature, an impartial and unprejudiced jury could not be had in Sedgwick County. Each motion moved the court for an order transferring the case to the district court of Wyandotte County.

In support of his motion, the defendant attached an affidavit of Roger N. Wilson, a newscaster for a Wichita radio station, identical in language as his affidavit attached to his motion in case No. 44,253, in which he stated he knew the defendant and because of publicity and rumor, the general reputation of the defendant reflected upon his character in a derogatory manner generally throughout the community, and, as a result of the defendant's reputation, it was not probable a jury could be selected to try the defendant upon the charges contained in the information, or in any other matter, which would not have a member or members who would not be prejudiced and biased against the defendant. Both motions were noticed for hearing on October 2, 1964, in division No. 5 of the district court of Sedgwick County.

At the hearing for change of venue, the defendant called as his first witness Mabel M. Snodgrass, the official court reporter for division No. 2, of the district court of Sedgwick County, who identified defendant's Exhibit "A" as being her uncertified, uncorrected office copy of a transcript of a hearing held October 3, 1963, before Judge Howard C. Kline in another criminal case involving the defendant, containing the sworn testimony of witnesses and Judge Kline's statement finding upon his "own knowledge" the defendant could not obtain a fair and impartial trial in Sedgwick County and granting a change of venue to the Saline County district court.

The defendant's second witness was Dale Dougherty, a reporter for the Wichita *Eagle*, and a resident of Sedgwick County for eighteen years. He testified that he reported the courthouse news; that he had seen stories in the local news media about the defendant; that within the last six months he had discussed the defendant's reputation with some persons and that his reputation and character were bad; that he did not know whether he agreed with the affidavit attached to defendant's motion and he was not sure what the result would be in impanelling a jury.

Dave Wilson was called as the defendant's third witness. He testified he had been a news director for nine years for a Wichita television station and had resided in Sedgwick County 23 years; that he had read and heard news regarding the defendant, but had

never heard him discussed by other people; that in his opinion it was not probable to select a jury which would not have members who would not be prejudiced and biased against the defendant; that his opinion was based upon the fact that an adequate opportunity for forming an opinion had been given to the citizens of Sedgwick County due to the fact that modern communications were so great and widespread; that this was true in every case, not just in the case of the defendant, as he had been treated no different in the news than anyone else who makes headlines frequently; that his station had not made or produced inflammatory utterances or articles about the defendant and he had made no effort to treat him any different than anyone else charged with a crime.

Judge Howard C. Kline was called as the defendant's fourth witness for the purpose of placing in evidence the statement of his ruling on October 3, 1963, and to ask him if he had heard or read anything about the defendant since that time that would have changed his opinion. The court, *in banc,* took judicial notice of Judge Kline's ruling in the prior case, but not the evidence at that hearing, and excused him from testifying.

The defendant's fifth witness was Roger N. Wilson who signed the affidavit attached to the defendant's motion for change of venue. He testified he had been a resident of Wichita for five years and was acquainted with the defendant; that he had made newscasts regarding the defendant but he had been treated no different than any other person about whom he had occasion to report; that based on the general reputation of the defendant in the community, half of the community felt the defendant was a man of unsavory reputation and the other half was of the opinion the defendant had a reputation roughly comparable to a Robin Hood and a man who was persecuted; that there was equal possibility or probability the state of Kansas and the defendant might not get a fair trial; that his opinion was not based on any current facts or circumstances but was only his impression of what others had said and he had overheard, and that there could be a good number of people who might wish to see the defendant in prison whether he was guilty or not, but he was not sure this was the feeling of the entire community or even the majority.

Following the introduction of the testimony, counsel proffered defendant's Exhibit "A" to show Judge Kline's statement and the reasons for his ruling in 1963. The proffer was refused, and the defendant rested, offering no further testimony.

The state filed fourteen counter affidavits taken in a random selection largely from a list of jurors who had already completed their service. Although six of those affiants had heard of the defendant, none of them had formed or expressed an opinion about his guilt or innocence, or the merits of the case, which would require evidence to dispel, and further stated that if they were selected to sit as a juror, they would limit their consideration and deliberations to the evidence, the law, and the common knowledge they shared with all mankind.

At the conclusion of the hearing, Judge Noone and Judge Riddel made a joint finding that they had not been convinced or shown there was any basis for change of venue; that they had no apprehension or fear the defendant would not receive a fair trial or that a jury of fair and impartial jurors could not be selected in Sedgwick County to try him, and, accordingly, denied the motion for change of venue.

The defendant concedes that in seeking a change of venue the burden rests upon him to show to the satisfaction of the district court that the inhabitants of Sedgwick County were so prejudiced against him a fair and impartial trial could not be had, citing *State v. Hooper*, 140 Kan. 481, 37 P. 2d 52, and further, that the district court must be allowed discretion in such matters, citing *State v. Knadler*, 40 Kan. 359, 19 Pac. 923. It is unnecessary to make an extended review of the many decisions of this court dealing with this subject. The law is clear, and recently this court restated its position in *State v. Turner*, 193 Kan. 189, 392 P. 2d 863, that:

"It has been a long-standing rule in this state, as stated by Justice Brewer in *State v. Furbeck*, 29 Kan. 532, that before a court is justified in sustaining an application for a change of venue on account of the prejudice of the inhabitants of the county, it must affirmatively appear from the showing that there is such a feeling and prejudice pervading the community as will be reasonably certain to prevent a fair and impartial trial. In *State v. Parmenter*, 70 Kan. 513, 79 Pac. 123, this court said it is not enough that prejudice against the defendant exists; but as the statute provides, it must exist to such an extent that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair trial cannot be had therein. In *State v. Bassnett*, 80 Kan. 392, 102 Pac. 461, it was said that G. S. 1949, 62-1321, requires that where proof is made by affidavits they must be to the satisfaction of the court. It is not enough that the petition state prejudice exists and a fair trial cannot be had; specific facts and circumstances showing prejudice must be stated, and not conclusions. (*State v. Welch*, 121 Kan. 369, 247 Pac. 1053.)

This subject has been thoroughly treated by this court in the case of *In re Hedrick Appeals,* 155 Kan. 165, 123 P. 2d 806, wherein it was stated:

" 'The facts that the arrest of one charged with crime and the offense of which he is charged have received an extensive amount of publicity in many newspapers, local and metropolitan, which are distributed and read throughout the county or judicial district, and the matters generally discussed by the inhabitants and opinions freely expressed concerning the same, without more, are insufficient as a matter of law to sustain an order for the change of venue.' (Syl. ¶ 7.) See, also, *State v. Vernon King,* 190 Kan. 825, 833, 378 P. 2d 147.

"The well-established rule is that before a change of venue to another county can be granted it must affirmatively appear that such prejudice exists as will be reasonably certain to prevent a fair trail. The ruling of the trial court upon this question will not be disturbed when supported by competent evidence, as it was here. (*State v. Miller,* 131 Kan. 36, 38, 289 Pac. 483; *State v. Hooper,* 140 Kan. 481, 495; 37 P. 2d 52.)" (l. c. 193, 194.)

We take judicial notice that the population of Sedgwick County numbers approximately 300,000, out of which the defendant filed one affidavit, and only two other witnesses gave testimony whose opinions were based on defendant's general reputation. An analysis of their testimony reveals they testified to no facts or circumstances showing prejudice. Their testimony, set forth at length in the state's counter abstract, has been carefully studied and it shows the witnesses were dealing in theoretical possibilities, not facts or circumstances or personal knowledge. Moreover, there was no evidence which substantiated the defendant's allegation that publicity through newspapers, radio and television had brought about his prejudice because the publicity was so derogatory to him and prejudicial to his interests that a fair and impartial jury could not be had. Not one single newspaper article was attached to his motion or introduced in evidence, and no other affirmative evidentiary examples of where or to what extent prejudice existed against the defendant were offered. In addition, the record clearly shows there was no difficulty in selecting a jury. The state waived its third and the balance of its peremptory challenges. The court asked the defendant for his peremptory challenge No. 3, and counsel stated, "If Your Honor please, I think we have a good jury," and waived his peremptory challenges. Both the state and the defendant passed the jury for cause. No contention is made there was any great public outcry or interest shown in the trial, or that the jurors were excited, upset, or prejudiced. The record does not show the court overruled any motion for a mistrial due to prejudicial conduct on the part of anyone. Nor does the defendant claim there was any mis-

conduct on behalf of the jury, although one of the grounds of his motion for a new trial was that a member or members of the jury had been guilty of misconduct. That ground was abandoned by the defendant at the hearing of the motion for a new trial and it is not raised as a specification of error in this appeal. These are all important factors to be considered by this court in determining whether the district court abused its discretion in overruling a motion for change of venue. In *State v. Welch*, 121 Kan. 369, 247 Pac. 1053, it was said:

"There is no immediate appeal from an order denying a change of venue. The order is reviewable only on appeal from conviction, and propriety of the order must finally be judged in the light of the proceeding resulting in conviction. A ruling may not be reversed merely to gratify a sentiment or to uphold a principle. The defendant must have suffered prejudice to his substantial rights. In this state, the readiness with which a qualified trial jury is obtained is pertinent to that subject. (*State v. Parmenter,* 70 Kan. 513, 515, 79 Pac. 123.) Defendant makes no complaint of difficulty in selecting a satisfactory jury. He does not suggest that, in examining jurors respecting their qualifications to sit, he found them to be in an excited state of mind, or so imbued with horror at what had been going on, or with detestation of crimes of violence, that wild conduct on their part was to be apprehended. He does not complain that any juror challenged for cause was permitted to remain on the jury. He does not show that he was obliged to exhaust his peremptory challenges. So far as the record discloses, no suspicion of prejudice against defendant entered the jury box when the jury was sworn, and there is no contention that an indignant populace invaded the precincts of the trial and communicated the contagion of its own mob passion to the panel. The statute provides that a new trial may be granted when a verdict is the result of passion and prejudice on the part of the jury. Refusal of the court to grant a new trial on that ground is not urged as error in his appeal. The result is, defendant's prediction that he could not have a fair trial failed, and the order of the district court denying the motion to change the venue of the trial is approved on two grounds: The application did not state facts sufficient to warrant the change, and the fact that a fair trial could be had in the county was demonstrated by the event." (l. c. 374.)

The defendant's failure to present affirmative evidence that prejudice existed so as to make it reasonably certain he could not obtain a fair trial, requires a conclusion that his evidence was totally and completely insufficient to permit the district court to order a change of venue. The facts concerning the trial itself, the lack of interest in the hearing for change of venue, the ease with which a jury was selected, the waiver by the defendant of three peremptory challenges, the statement of his counsel that it was a good jury, and the failure to allege any factors showing prejudice in the trial

demonstrates to this court that the district court's ruling denying a change of venue was eminently correct.

The defendant argues the district court committed prejudicial error in not permitting Judge Howard C. Kline to testify on his behalf. The record is clear and unequivocal that the real reason for calling Judge Kline was an attempt to substitute his judgment in the prior case for that of the judges hearing the instant case. The court, *in banc*, stated it would take judicial notice of his order but that it would not take judicial notice of the evidence offered. Counsel stated he intended to call Judge Kline to inquire of him if he had heard any story or read anything in the newspaper since the hearing before him in October, 1963, that would have changed his opinion; to ask him if he was of the same opinion based upon those facts as he was a year ago, and to offer his statement into evidence. In support of his proffer of defendant's Exhibit "A," counsel stated:

"Now in our case we have made an application as an individual standing charged with two crimes in two divisions that Your Honors sit in. *We have asked that a citizen, Honorable Judge Kline, be called here to testify, to set out his facts; the reasons why he made the decision he made.* And if the Court had allowed me—and this is in the form of a proffer—to introduce to Your Honors the transcript of the prior proceedings, Your Honors would have noticed that it was in a sense analogous to the situation in the Hendrick Case.

"*Judge Kline said I don't care about the newscasters and all their testimony, I'm going to base this on facts that I know. In substance this is what he said—* it's not before you and this is in the form of a proffer—as an individual. . . .

"*Possibly, our evidence here before this Court hasn't been factual enough,* but I think that in a district where you have a District Court Judge who even though—when the defendant has applied for a change of venue, *and where his attorneys fail as a matter of law to prove a change of venue,* when he has peculiar knowledge himself, that one should be granted. If we have introduced one scintilla of evidence that a change of venue should be granted, coupled with what you know in your minds about this man, I think you've got to grant a change of venue, much the same as Judge Kline did, and I think that is the distinction between these two cases. And that is why we want—I didn't want to introduce Defendant's Exhibit A for—*I don't care so much about the testimony that the newscasters presented here.* I care . . . for those facts which the judge set out in his findings of fact and conclusions of law, *which were not necessarily proven in each instance by our evidence in that hearing.*" (Emphasis supplied.)

In denying the defendant's proffer, the court stated:

"JUDGE NOONE: Two reasons: let the record show them both: First; because this Court is not going to permit any judge of this court or any other court to be questioned on the witness stand under oath as to whether or not he has changed his mind about a previous decision he made in another case.

And, secondly, it's not going to permit any judge of this court or any division thereof or any other court to be asked his opinion of a matter on trial in another court, which is totally and wholly improper. And, finally, this matter, as we announced earlier this afternoon, is going to be tried on the issues in this affidavit, and on nothing else except the counter-affidavit, and for that reason, it is the joint ruling that the proffer is rejected and Judge Kline, you are excused."

We think the district court did not err in excusing Judge Kline as a witness and in rejecting the defendant's proffer. In the first place, as pointed out by the district court, the statute (K. S. A. 62-1321) provides that the truth of the allegations of a petition for change of venue shall be tried by affidavits of the petitioner and counter affidavits of the state. The requirement does not contemplate statements of a judge in deciding a prior and wholly unrelated case to the one then pending before the court. In the second place, with one exception, all of the witnesses who testified before Judge Kline were present and testified in the instant case. Obviously, the fact of calling him could not have been to testify to matters which transpired at the former hearing. The witnesses were present and the opportunity was afforded to ask them any questions they were previously asked. In fact, the record discloses the same general questions were asked and answered. In the third place, and without passing upon the validity of Judge Kline's previous order which is not before us, it would have been impossible for the state to file counter affidavits in opposition to Judge Kline's state of mind, who made his decision based on facts within his own knowledge. (*State v. Taylor*, 137 Kan. 280, 20 P. 2d 628.) The proof is to be made under the sanctity of an oath, not upon the opinion of unsworn persons who do not disclose the source of facts recited. As previously indicated, Judge Kline's conclusion was not based upon evidence presented before him, but was based upon his own knowledge.

After the district court denied the proffer, counsel inquired if the court's ruling would be the same if Judge Kline were called as any other citizen to testify, without referring to the previous case. The court stated:

"If there is any reason why this man cannot get a fair trial in this court that exists today, there is nothing to stop you from putting on evidence as to what they are today, not what they were last October."

Counsel made no attempt to call Judge Kline as an individual citizen, but rested his case, offering no further testimony. At the hearing on the motion for a new trial, the defendant did not offer

Judge Kline's testimony as an individual, nor is the refusal to permit him to testify as an individual included in the notice of appeal or in the specifications of error.

The state does not contend that a judge may not be called as a citizen to testify in a case. Opinion 15 of the Digest of Opinions of the American Bar Association, interpreting Canon No. 4 of the Canons of Judicial Ethics, as found on page 111 of the Ethics Handbook published by the Bar Association of the State of Kansas, states:

"A judge may testify to the good character of a criminal defendant, after careful consideration of whether his testimony is necessary to a fair trial or simply a defense attempt to utilize the weight of his judicial position."

The proceeding in which the defendant attempted to have Judge Kline testify was not a trial on the merits of a case in which a judge would have to determine himself whether to testify on behalf of the defendant, but was a question of law to be decided by the district court. It is abundantly clear there was no refusal on the part of the district court to take judicial notice of the ruling in the prior case, and it did not err in refusing to receive extrinsic evidence to alter or explain that judgment approximately a year after it was rendered.

In its case in chief, the state presented the testimony of Jack Flournoy over the objection of the defendant because of incompetency of the witness due to his insanity during the period covered by his testimony. On April 3, 1962, Flournoy was adjudged insane by the probate court of Sedgwick County, which was just prior to the alleged conversations and incidents with the defendant. Thereafter, Flournoy was "restored" and no claim was made the witness was not competent at the time of trial. Following the defendant's objection, a hearing was had by the district court in chambers. The court held that since the defendant was not attacking the competency of the witness at the time he was testifying, but rather his incompetency at the time he perceived the events about which he was going to testify, the defendant's objection went to the credibility of the witness' testimony, which was a matter for the jury and not a question of admissibility to be decided by the court.

The defendant contends the district court had a duty under K. S. A. 60-408 to make inquiry concerning the extent of Flournoy's illness and determine the type of insanity he was adjudged to have had, and if it was the type which created a delusion, that is, "that he could be recalling a dream," which was capable of recollection and which might be false, he should not have been permitted to testify. We do not agree.

Prior to the adoption of the New Code of Civil Procedure, G. S. 1949, 60-2805, provided in part:

"The following persons shall be incompetent to testify:

"*First.* Persons who are of unsound mind *at the time of their production for examination."* (Emphasis supplied.)

Under that provision, this court held in *Sarbach v. Jones,* 20 Kan. 497, as follows:

"A person who has at some time, prior to the trial at which he is called upon to testify, been declared insane, and placed under guardianship, and thereafter, and before being introduced as a witness, has been duly adjudged sane and released from guardianship, is a competent witness in the case. Such witness, after his restoration to sanity, may testify respecting facts which occurred during the period he was under guardianship; and it is for the jury to judge of the credit that is to be given to his testimony." (Syl. ¶ 2.)

In the opinion it was said:

". . . A man may have many delusions, and yet be capable of narrating facts truly; and the existence of such delusions on his part, at the time of the occurrences which he is called upon to relate, goes to his credit, and not to his competency, when he is of sound mind at the time he is called upon to testify. . . ." (l. c. 500.)

See, also, *Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846.

K. S. A. 60-407 provides, in part:

"Except as otherwise provided by statute (*a*) every person is qualified to be a witness. . . ."

This section is the keystone of the entire system of Rules of Evidence provided in Article 4 of the Code of Civil Procedure. It abolishes all pre-existing disqualifications and privileges of witnesses and wipes the slate clean of all other exclusionary rules, leaving the one requirement for the admissibility of evidence, that of relevance. If the evidence is relevant to the issue being investigated, the jury is permitted to receive it, unless some other rule of exclusion or privilege, as announced in Article 4 or other statutes, causes the evidence to be excluded. (4 Vernon's Kansas Code of Civ. Proc., pp. 198, 199.) Under this section, a witness is presumed to be competent to testify. His incompetency, therefore, must be challenged and the burden of establishing incompetency rests on the challenger. (4 Vernon's Kansas Code of Civ. Proc., p. 269.)

Although the provisions of 60-407 are limited by the provisions of 60-417, the text is basically the same as the prior statute. (G. S. 1949, 60-2805.) Under 60-417 a person is disqualified to be a wit-

ness if the judge finds he is incapable of expressing himself concerning the matter so as to be understood by the judge and jury, or is incapable of understanding the moral duty of a witness to tell the truth. This section does not provide for disqualification on the basis of incapacity to observe or recollect. The witness' capacity to perceive or remember are for the fact finders—the jury—to consider in weighing the credibility of his testimony, but they are not bases of exclusion. (4 Vernon's Kansas Code of Civ. Proc., p. 269.)

The defendant makes no claim that Flournoy was incapable of expressing himself so as to be understood by the jury, nor does he claim that Flournoy was incapable of understanding the moral duty of a witness to tell the truth. Tested by the foregoing rules, Flournoy was not disqualified to testify. Whether he was insane and the type of insanity he may have had were matters which were determined by the probate court in 1962, and the district court was not concerned with those matters at the trial. It being conceded Flournoy was competent to testify as a witness at the time of trial, and not being disqualified under rules prescribed in 60-417, the defendant's reliance on 60-408 is misplaced as that section establishes a rule for trial procedure when the qualification to be a witness, or the admissibility of evidence, or the existence of a privilege, is subject to a condition and the fulfillment of the condition is in issue. No issue was presented under the record in this case with respect to Flournoy's competency to testify, and the district court did not err in overruling the defendant's objections.

The defendant lastly contends the district court erred in not granting him a new trial. This court has carefully examined the entire record, and the evidence against the defendant was overwhelming. Counsel has been diligent in raising alleged trial errors. Each has been carefully examined, but the defendant has failed to make it affirmatively appear the district court erred in any respect in overruling his motion for a new trial, or that he was not afforded a fair and impartial trial in Sedgwick County.

The judgment of the district court is affirmed.