No. 43,651

STATE OF KANSAS, *Appellee,* v. ALVIN R. TURNER, *Appellant.*

(392 P. 2d 863)

Opinion filed June 6, 1964.

*David R. Gilman,* of Overland Park, argued the cause, and *Myles C. Stevens,* of Kansas City, was with him on the briefs for the appellant.

*James W. Bouska,* and *Bernis G. Terry,* assistant county attorneys, argued the cause, and *William M. Ferguson,* attorney general, and *Hugh H. Kreamer,* county attorney, were with them on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Alvin R. Turner, appellant, hereinafter referred to as defendant, was duly charged by an information in the district court of Johnson county with the crime of murder in the first degree in shooting and killing John R. Keach. Upon a trial, the jury found the defendant guilty as charged and fixed the punishment at life imprisonment. From an order overruling his motion for a new trial, defendant has appealed and contends the court erred in: (1) overruling his motion for a change of venue; (2) overruling his motion to quash the information; (3) admitting specified evidence; (4) admitting into evidence written statements

made by defendant which defendant maintains were involuntarily given; (5) admitting into evidence two photographs taken of the deceased at the place of the murder; and (6) failing to properly instruct the jury.

While the trial of the instant case lasted approximately nine days, and the abstract of record here consumes over 200 printed pages, only so much of the facts as are pertinent to the issues involved will be related.

One Roy Jack Loren, Jr., hereinafter referred to as Loren, and the defendant, Turner, were friends. Defendant owned a Cadillac automobile. About 6:30 p. m. on December 11, 1962, Loren told defendant he had a place "to go and look over" and asked defendant to go with him. The two men got into defendant's automobile and drove to a gasoline station where defendant purchased gasoline for the car. Loren then took the wheel, as he knew where he was going, and defendant slid over to the right side of the front seat. They drove through the Plaza area of Kansas City, Missouri, to the highway, then down the highway quite some distance, turned onto a side street leading past several large homes in Johnson county, Kansas, stopped the car, and put on the parking lights. Loren told the defendant to take the car and drive around several blocks, come back, and by that time he would be ready to go. Loren jumped out of the car and headed towards the Keach home. Defendant drove the car around several blocks, came back to the Keach home, pulled into the driveway, then backed the car out, turned around, parked in front of the Keach home, and waited for Loren. While in the Keach home Loren shot and killed Keach, then pilfered the house for loot, and came out of the house with a bushel basket containing many different items. Defendant stated Loren was in the house a good half hour and made three different trips from the house to the car. On his last trip he brought out a television set, a picture machine and a small box. Loren put all of the items in the back of the defendant's car. They then returned to Kansas City where they contacted a man, who later proved to be a Mr. Coleman, in an attempt to sell the television set. From Coleman's house they then went to Loren's mother's residence where all of the items were unloaded from the car, carried into the house and placed in a bedroom. At this point defendant asked Loren what had happened at the Keach home and Loren replied that Keach was dead.

The next day Loren took the television set to Coleman's house, left it, and said he would be back to collect $40, the sale price agreed on for the set. The following day defendant went to Coleman's home to collect the $40, but Coleman refused to pay him. Loren, who was sitting in defendant's automobile that was parked down the street, was so advised by defendant, and Loren himself then went to Coleman's home for the purpose of collecting the money.

At the time of defendant's arrest on December 14, 1962, the murder weapon was found in his possession. Defendant was granted a preliminary hearing and bound over to the district court for trial for the offense of murder in the first degree. An information charging the defendant with murder in the first degree was filed in the district court on January 29, 1963, and competent and able counsel were appointed to represent the defendant throughout the proceedings in that court and on appeal to this court.

Turning now to the questions argued on this appeal, defendant first contends the court erred in refusing a change of venue. The application was filed pursuant to G. S. 1949, 62-1318 and 62-1319. In his application for change of venue defendant alleged prejudice by county inhabitants against him to the extent he could not receive a fair trial. In support of his motion defendant filed twenty-one affidavits, identical in wording, which stated each affiant knew the deceased or was familiar with his reputation in the community, had read and seen newspaper accounts and photographs concerning the murder, had formed an opinion as to the guilt of the defendant, and did not feel he could judge defendant's guilt or innocence fairly or impartially were he called upon to do so.

The state filed twenty-four counter affidavits, identical in wording, stating that since the arrest of defendant affiant had heard no persons residing in the county say the defendant was not entitled to a fair trial; that from the conversations each affiant had with other persons he had heard nothing to indicate that anyone was biased or prejudiced against the defendant or that defendant could not have a fair trial in Johnson county; and that the articles in the newspapers had not prejudiced him against' the defendant.

The sheriff filed an additional affidavit stating there had been few inquires by any person pertaining to the whereabouts of the defendant and there had been no indications by any person that any violence was intended to the person of the defendant during

his confinement in the Johnson county jail; that there had been no disturbance by any person or persons outside or in the vicinity of the jail while the defendant was in custody, or while he was being taken before the magistrate court for his preliminary hearing, or at any other time the defendant appeared in court. The sheriff further stated that in his trips throughout the county he heard no person indicate the defendant could not expect a fair trial in Johnson county.

The defendant also presented some newspaper articles reporting the shooting and killing of Mr. Keach. The court, after considering the motion and the evidence in support thereof and opposition thereto, found no showing had been made that would lead the court to believe the defendant could not have a fair trial in Johnson county.

It has been a long-standing rule in this state, as stated by Justice Brewer in *State v. Furbeck*, 29 Kan. 532, that before a court is justified in sustaining an application for a change of venue on account of the prejudice of the inhabitants of the county, it must affirmatively appear from the showing that there is such a feeling and prejudice pervading the community as will be reasonably certain to prevent a fair and impartial trial. In *State v. Parmenter*, 70 Kan. 513, 79 Pac. 123, this court said it is not enough that prejudice against the defendant exists; but as the statute provides, it must exist to such an extent that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair trial cannot be had therein. In *State v. Bassnett*, 80 Kan. 392, 102 Pac. 461, it was said that G. S. 1949, 62-1321, requires that where proof is made by affidavits they must be to the satisfaction of the court. It is not enough that the petition state prejudice exists and a fair trial cannot be had; specific facts and circumstances showing prejudice must be stated, and not conclusions. (*State v. Welch*, 121 Kan. 369, 247 Pac. 1053.) This subject has been thoroughly treated by this court in the case of *In re Hedrick Appeals*, 155 Kan. 165, 123 P. 2d 806, wherein it was stated:

"The facts that the arrest of one charged with crime and the offense of which he is charged have received an extensive amount of publicity in many newspapers, local and metropolitan, which are distributed and read throughout the county or judicial district, and the matters generally discussed by the

inhabitants and opinions freely expressed concerning the same, without more, are insufficient as a matter of law to sustain an order for the change of venue." (Syl. ¶ 7.)

See, also, *State v. Vernon King,* 190 Kan. 825, 833, 378 P. 2d 147.

The well-established rule is that before a change of venue to another county can be granted it must affirmatively appear that such prejudice exists as will be reasonably certain to prevent a fair trial. The ruling of the trial court upon this question will not be disturbed when supported by competent evidence, as it was here. (*State v. Miller,* 131 Kan. 36, 38, 289 Pac. 483; *State v. Hooper,* 140 Kan. 481, 495, 37 P. 2d 52.)

We take judicial notice the population of Johnson county numbers approximately 144,000, out of which defendant filed twenty-one identical affidavits stating no more than should affiants be called to sit as jurors they did not feel they could judge defendant's guilt or innocence fairly or impartially. Moreover, the record discloses that upon the examination of fifty-seven prospective jurors only one was challenged for cause by the defendant. Fourteen were excused by the state for the reason each had some belief or opinion the death penalty was too severe. Of those remaining, none had formed any fixed or abiding opinion concerning the guilt or innocence of the defendant. At the conclusion of the impaneling of the jury the defendant passed the jury for cause. He then made no complaint or challenge as to the qualifications of the jury, and, in fact, did not exhaust all of his peremptory challenges.

We are of the opinion there was not the remotest cause for the court to have sustained defendant's motion for a change of venue.

Secondly, it is contended by defendant the information does not meet the requirements of G. S. 1949, 21-401, which provides:

"Every murder which shall be committed by means of poison or by lying in wait, or by any kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or an attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree."

in that the information alleges as the facts which constitute the crime that the assault with the weapon was made by the defendant. The charging part of the information follows:

". . . that on or about the 11th day of December A. D., 1962, in said County of Johnson, and State of Kansas, one Alvin R. Turner did then and there unlawfully, feloniously, willfully, maliciously, deliberately, premedi-

tatedly, on purpose and with malice aforethought, inflict a mortal wound upon one John R. Keach, by then and there shooting the said John R. Keach in the head with a firearm, from which said wound said John R. Keach died on or about the 11th day of December, 1962, and the said: ALVIN R. TURNER did unlawfully, willfully, maliciously, feloniously, deliberately, premeditatedly, and on purpose and with malice aforethought, kill and murder him, the said John R. Keach, . . ."

The state does not contend defendant fired the shot that killed Keach; on the contrary, it is conceded the act of killing was done by Loren, who subsequently was shot and killed in an attempt to escape when police officers attempted to apprehend him. The state seeks to fasten responsibility upon this defendant on the theory he and Loren formed a conspiracy to rob Keach, and in the execution of their plan Keach was killed by Loren; in other words, that Keach was murdered in perpetration of the robbery or burglary.

This precise question has been before this court on numerous occasions, and an extensive discussion of it is now unnecessary. It must be accepted in this jurisdiction that the information is sufficient to charge the crime of murder and to sustain a conviction of murder in the first degree where the killing is done with malice aforethought, deliberation, and premeditation. Such is the rule of law as laid down in *State v. Roselli,* 109 Kan. 33, 35, 36, 198 Pac. 195, where it is stated:

"On numerous occasions this court has adverted to the fact that the statute does not define murder, and that the basis of the legislation is murder at common law. . . . Every murder committed by any kind of willful, deliberate and premeditated killing, is murder in the first degree. Use of poison, lying in wait, and killing in perpetrating or attempting to perpetrate arson, rape, robbery, burglary, or other felony, are statutory equivalents for the deliberation and premeditation essential to murder in the first degree. . . .

"The code of criminal procedure requires an information to be definite and certain respecting the crime charged, and requires a statement of the facts constituting the offense. There is no substantial dispute in the authorities that, under a crimes act of the character described, these requirements are satisfied by pleading murder in the first degree in the common form. Deliberation and premeditation are ultimate facts. When alleged they denote murder in the first degree, and they may be established by proof of murder committed in perpetrating a felony, without pleading the particulars. ( Citing cases.)

"In the case of *The State v. Keleher,* 74 Kan. 631, 87 Pac. 738, it was said: "'Proof that a homicide was committed in the perpetration of a felony is held tantamount to the premediation and deliberation which otherwise would be necessary to constitute murder in the first degree.'"

The defendant contends the information did not charge a conspiracy between Loren and himself to rob or kill Keach, and without such a pleading the defendant could not be convicted of murder on evidence showing Loren did the killing. It was not necessary to plead conspiracy in terms. All participants in a crime are equally guilty, without regard to the extent of their participation. It was sufficient to charge directly those concerned with the crime, and if, in execution of a common purpose to rob, one of them did the killing, the other would be guilty of murder. (*State v. Roselli,* supra, p. 36.) See, also, *State v. Jella,* 132 Kan. 509, 296 Pac. 350; 26 Am. Jur., Homicide, § 253, p. 331; 40 C. J. S., § 9e, p. 843, *et seq.*, and § 148, p. 1038.

The record is replete with evidence that the defendant participated in the commission of the robbery or burglary of the Keach home, and it follows he is equally guilty with Loren of the murder. Therefore, it was only necessary for the state to produce evidence which tended to connect the defendant with the commission of the crime of the robbery or burglary of the Keach home and that Keach was murdered in the perpetration of such acts.

The overruling of the defendant's motion to quash the information did not deny defendant any rights guaranteed by Section 10 of the Bill of Rights of our state constitution or the due process clause of the federal constitution.

The defendant next contends it was error for the trial court to admit into evidence the testimony of one Robert Coleman, made out of the presence of the defendant, who testified as to the actions and declarations of Loren in an attempt to show a conspiracy. While the evidence was introduced somewhat out of order, defendant expressly consented thereto, in the interest of time and justice, and therefore waived any objection to the order in which the evidence was to be presented. Coleman testified about Loren's bringing the television set to him and attempting to make a sale, and that the defendant later came to Coleman's house to collect for the television set stolen the night Keach was robbed and his home burglarized.

G. S. 1949, 62-1016, provides that any person who counsels, aids and abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. The rule is well established that, upon the trial of an indictment for a crime, evidence is admissible to prove a conspiracy to com-

mit the crime charged, although the conspiracy is not charged in the indictment. This is permitted not for the purpose of allowing a conviction for a crime not specifically charged, but merely to show the intent with which the parties acted. (11 Am. Jur., Conspiracy, § 37, p. 568.) It seems to be well established that evidence of a conspiracy between several parties to commit the crime, even though all of the conspirators are not joined in the indictment or information, is admissible. The mentioned matter has been recently discussed and ably analyzed in *State v. Borserine*, 184 Kan. 405, 337 P. 2d 697, wherein this court stated:

"Evidence of a conspiracy involving several persons to commit the crime for which one is separately charged in an indictment or information is admissible to show a conspiracy between the one separately charged and the others, although the others are not joined in the indictment and information and no conspiracy is charged therein. . . ." (Syl. ¶ 2.)

"Evidence of the acts and declarations of the co-conspirators, done and made in the absence of the accused, is admissible so far as it pertains to the furtherance of the common criminal design, to its consummation, to the disposition of its fruits, and to acts done to preserve its concealment, as an exception to the rule against the admissibility of hearsay evidence. The acts and declarations of one conspirator in the prosecution of the crime in the foregoing respects are considered the acts and declarations of all, and are evidence against all. (*State v. Emory*, 116 Kan. 381, 226 Pac. 754.)" (Syl. ¶ 5.)

We are of the opinion the *Borserine* case fully answers defendant's contention, and the admission of the testimony of Coleman did not violate any of the provisions of either the state or federal constitutions.

Defendant next contends the written statements made by him subsequent to his arrest were improperly admitted into evidence on the ground they were not shown to have been voluntarily made.

The trial court conducted a *voir dire* examination in the absence of the jury as to whether or not the statements made by defendant and offered into evidence were free and voluntary. The evidence disclosed that after discussions were had between the officers and defendant, defendant agreed to make statements about the events occurring on the night Keach was murdered. The defendant was duly sworn and then questioned by officers while a stenographer wrote down the questions and answers. The statements were transcribed by the stenographer, submitted to defendant, and after reading them, defendant signed the statements.

Prior to the questioning of defendant, the officers advised him they wished to talk to him about the Keach case, explaining to him

he did not have to talk about the case, that anything he told them could be used against him in court, and that he had the privilege of having a lawyer, if he so desired. The defendant replied he understood this. The record disclosed the defendant testified in part concerning the giving of the statements as follows:

"Q. Then did they tell you you didn't have to make a statement?
"A. At the time, yes, he did tell me that I didn't have to make a statement.
"Q. Told you you could talk to a lawyer?
"A. Yes, he told me I could talk to a lawyer.
"Q. And what did you tell him?
"A. I told him that I didn't think I needed a lawyer because didn't see that I had done anything wrong."

Later defendant again testified:

"A. . . . I was informed that I could call the attorney if I wanted one."

The defendant further testified it was his signature on the statements and he was not contending he was beaten or physically mistreated or not fed. He testified to no force or coercion.

After hearing this and other evidence pertaining to the voluntary statements made by the defendant, the court found that no statements or admissions made by the defendant were the result of any threats, duress, promises, intimidation, artifice, trickery or coercion, or that they were the result of any substantial interrogation of the defendant that could be said to have robbed him of his own free will be making the statements or admissions. The court further found that the statements were freely and voluntarily made and were admissible for the jury's consideration.

We stated in *State v. Fields*, 182 Kan. 180, 185, 318 P. 2d 1018:

"It has long been the rule that such oral admissions against interest in criminal prosecutions are properly admitted as evidence if fully made, without inducement or duress, or brought about by some other improper means, and such admissions do not contravene Section 10 of the Bill of Rights against self-incrimination."

See, also, *State v. Robinson*, 182 Kan. 505, 322 P. 2d 767; *State v. Latham & York*, 190 Kan. 411, 435, 375 P. 2d 788.

In the instant case the defendant, by his statements, did not acknowledge the guilt of the crime for which he was charged but only facts pertaining to the crime, which, in connection with other facts, tended to prove his guilt. The admissions were not in themselves sufficient to authorize conviction and thus were not a confession, and defendant's counsel here do not argue his statements amounted to a confession.

We are of the opinion the court did not err in admitting the statements into evidence.

It is next asserted the court erred in the admission of two photographs of the deceased victim taken while he was lying on the floor in his home immediately after the killing. It appears the photographs were introduced for the purpose of identifying the deceased and to portray the facts described by the pathologist witness and the county coroner concerning the autopsy performed on the body of the deceased victim, describing in particular wounds in and about the head, some of which were described as causing death of the deceased. The two pictures were of the head of the deceased and were not gruesome, nor would they particularly inflame or prejudice the jury. Pictures of this character, and even gruesome pictures, have been held properly admissible in evidence. Generally physical objects which constitute a portion of a transaction or which serve to unfold or explain it may be exhibited in evidence, if properly identified, whenever the transaction is under judicial investigation. No useful purpose would be gained in extending this already lengthy opinion. Suffice it to say defendant's objection to the admissibility of these pictures as evidence has been fully discussed by this court on numerous occasions and held that such evidence did not deny the defendant a fair trial as guaranteed by both our state and federal constitutions. (*State v. Spencer,* 186 Kan. 298, 303, 349 P. 2d 920; *State v. Sweet,* 101 Kan. 746, 754, 755, 168 Pac. 1112; *State v. King,* 111 Kan. 140, 206 Pac. 883, 22 A. L. R. 1006; *State v. Stubbs,* 186 Kan. 266, 273, 349 P. 2d 936; *State v. Moore,* 80 Kan. 232, 236, 102 Pac. 475.)

Defendant's final contention is that the trial court erred in giving instructions Nos. 13 and 14 and in refusing to give four of his requested instructions.

In the first place, defendant's abstract contains only instructions Nos. 13 and 14 and his four requested instructions. The record discloses the court gave twenty-two instructions. We have repeatedly held that where instructions are challenged on the grounds they are not full enough to cover the issues in the case or that they are erroneous, and where a party expects to argue that the trial court erred in this respect, he must bring up all instructions given by the trial court; otherwise, there is no way for this court, on review, to determine what may or may not have been included in those instructions not brought here. It devolves upon the party

appealing to bring up a complete record of matters on which review is sought. Unless an instruction to which an objection is made is a clear and prejudicial misstatement of the law, it can be reviewed only when other instructions, which may or may not qualify its intent and effect, are made a part of the record, in order that all may be examined together. (*State v. Ellis,* 192 Kan. 315, 318, 387 P. 2d 198; *State v. Watkins,* 190 Kan. 446, 447, 375 P. 2d 634; *State v. Lammon,* 153 Kan. 822, 824, 825, 113 P. 2d 1052.)

An examination of the two instructions given reveals that neither is erroneous as a matter of law. Moreover, the record does not disclose the defendant made any objection at the time the instructions were given.

As to defendant's first requested instruction, the court stated it had adequately covered the same in one of its instructions given. The court properly denied defendant's second requested instruction on second degree murder for the reason the case was tried under G. S. 1949, 21-401, under the felony murder rule, and defendant's request was inapplicable to the facts in the case. The court properly denied defendant's requested instruction No. 3 on aiding and abetting on the ground it had been adequately covered by the instructions given, and also denied defendant's requested instruction No. 4, which encompassed the offense of accessory after the fact, on the ground the case was not tried on the theory of an accessory after the fact, it being a separate and distinct crime. Where, as in the instant case, the information charges murder in the first degree under G. S. 1949, 21-401, it does not include being an accessory after the fact, which is a separate and distinct offense, and the court properly refused to give the requested instruction on the offense not included in the information. (G. S. 1949, 21-106; *State v. Phillips,* 136 Kan. 407, 410, 15 P. 2d 408.)

The lengthy record presented to this court for review has been carefully examined and the defendant has failed to make it affirmatively appear he has not been granted a fair trial before an impartial jury or that any of his rights under Section 10 of the Bill of Rights of our state constitution or the due process clause of the federal constitution have been violated.

The judgment of the trial court is affirmed.