No. 50,306

STATE OF KANSAS, *Appellee,* v. BETTY L. GIDDINGS, *Appellant.*

(595 P.2d 1115)

Opinion filed June 9, 1979.

*Darrel W. Frogley,* of Kansas City, argued the cause and was on the brief for appellant.

*Dennis L. Harris,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is a direct appeal by defendant-appellant Betty L. Giddings from a conviction by a jury of one count of first degree murder under the felony murder rule, K.S.A. 21-3401. The underlying felony was robbery.

The victim, Jack D. Reynolds, was a pipefitter from Enid, Oklahoma, and had been working near St. Marys, Kansas. On Sunday, January 15, 1978, at 10:00 a.m., Reynolds left his home for St. Marys in anticipation of going to work on Monday. He intended to visit friends in Topeka and watch the Super Bowl game Sunday afternoon. Sunday night about 10:30 p.m., Reynolds was found lying alongside State Avenue in Kansas City, Kansas. The lower part of his body was wrapped in a blanket, subsequently identified as belonging to the defendant, and tape was wrapped around one of his wrists. Reynolds had been shot twice in the head with a .22 caliber weapon and died the next morning at the University of Kansas Medical Center.

The only evidence of what may have occurred between 10:00 a.m. and 10:30 p.m. that Sunday is in three inconsistent statements given by defendant and her lengthy testimony at trial. The gist of all her statements and testimony was to the effect that she was an innocent bystander and that her sometime live-in boy friend, Jerry Clayton, was solely responsible. Clayton was charged but has not been apprehended and tried.

We will not attempt to state the complicated facts that may be gleaned from the various inconsistent statements and testimony of the defendant other than to the extent necessary to consider her points on appeal.

Appellant's first argument is that it was error for the trial court to admit into evidence a sawed-off shotgun, shotgun shells, a hacksaw and photographs of the same items. As Reynolds was killed with a .22 caliber weapon, it is obvious that these items were not the murder weapons. The shotgun had been taken on January 11th by appellant and Clayton from her stepfather's house in Osborne, Kansas. At the time, the appellant was trying to raise money to get a daughter out of jail in Beloit. The hacksaw and shotgun shells had been purchased in Osborne and the hacksaw was used to saw the barrels off the shotgun. Appellant and Clayton had traveled to Beloit in a rented car and returned to Kansas City on January 14th or 15th. On the night of the 15th they first made contact with the victim and ultimately he was shot, and defendant and Clayton departed with the victim's truck and other belongings. The hacksaw was found in the trunk of the car admittedly used by appellant and Clayton during the robbery and murder and the other items were discovered at appellant's home along with property which belonged to the victim. The trial court found the evidence to be relevant and admitted it as part of the res gestae. Relevant evidence is evidence having any tendency in reason to prove any material fact and the determination of relevancy is a matter of logic and experience, not a matter of law. *State v. Nemechek,* 223 Kan. 766, 576 P.2d 682 (1978). Subject to certain exclusionary rules the admission of evidence lies within the sound discretion of the trial court. *State v. Jakeway,* 221 Kan. 142, 558 P.2d 113 (1976); *State v. Wasinger,* 220 Kan. 599, 556 P.2d 189 (1976); *State v. Baker,* 219 Kan. 854, 549 P.2d 911 (1976). The items admitted in evidence bore a reasonable relationship to the facts as determined from the statements and testimony of the defendant. Appellant's first point is without merit.

Appellant's second point concerns the refusal of the trial court to give certain requested instructions. The underlying felony upon which the felony murder conviction was based was the robbery of the victim. Certain property of the victim was found in

appellant's home, the blanket in which Reynolds was wrapped belonged to appellant and appellant and Clayton collaborated in the sale of the victim's truck. Appellant contended throughout her various statements and testimony that Clayton was the culprit and she was an innocent bystander who could not manage to escape. The trial court gave instruction No. 5 based upon PIK Crim. 54.05 (1975 Supp.) as follows:

"A person is criminally responsible for the conduct of another, when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime, she intentionally aids or advises the other to commit the crime."

Appellant did not object to this instruction but requested in addition to it a variation of PIK Crim. 54.06, which reads:

"A person who intentionally (aids) (hires) another to commit a crime is responsible for any other crime committed in pursuance of the intended crime, if such crime was reasonably foreseeable."

Appellant argues that the foreseeability instruction should have been given based upon K.S.A. 21-3205(2) and in addition she requested an instruction on robbery as being the underlying felony.

K.S.A. 21-3205 provides in part:

"21-3205. Liability for crimes of another. (1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended."

Appellant argues that as the court gave an instruction based upon K.S.A. 21-3205(1), she was entitled to an instruction based upon 21-3205(2) and the failure to give such an instruction deprived her of the defense of a lack of foreseeability that the murder might result. While it is true that foreseeability is a requirement to the application of the felony murder rule, this requirement is satisfied once it is determined that the felony is inherently dangerous to human life. This point was covered in *State v. Branch and Bussey,* 223 Kan. 381, 573 P.2d 1041 (1978):

"To apply the felony murder rule, it is only necessary to establish that defendants committed a felony inherently dangerous to human life and that the killing took place during the commission of the felony. (*State v. Guebara,* 220 Kan. 520, 523,

553 P.2d 296; *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279.) A requirement of the felony murder rule is the fact the participants in the felony could reasonably foresee or expect that a life might be taken in the perpetration of such felony. If applied to the facts of the present case, defendants are subject to the felony murder rule and it makes no difference that the killing was accidental.

"A felon's attempt to commit a robbery sets in motion a chain of events which should cause him to contemplate that a death might occur. This is particularly true of a robber who carries a deadly weapon (as these robbers did) and forces his way into an occupied dwelling. The impulse for an individual to resist the sudden show of force, to defend himself or to come to the aid of a family member or loved one, is a basic human instinct. Under such circumstances every robber who expects human opposition to his quest to steal, as he must when he commits a statutory robbery, is a potential assassin because he knows he may be forced to use his weapon either to carry out his criminal act or to escape without being pursued and captured by his victim. In a felony inherently dangerous to life the intent to accomplish the initial felony is transformed into malice and premeditation upon the death of a human being and the felon is guilty of first degree murder. . . .

. . . .

"We conclude that any participant in a life-endangering felony is guilty of first degree murder when a life is taken in the course of committing or attempting to commit the felony, whether the death was intentional or accidental, or whether the participant directly caused it to occur. (See, *State v. Bey,* 217 Kan. 251, 535 P.2d 881; *State v. Turner,* [193 Kan. 189, 392 P.2d 863]; *State v. Bundy,* 147 Kan. 4, 75 P.2d 236.)" (pp. 382-384.)

It is therefore readily apparent that in the case at bar where the evidence clearly established appellant was more than an innocent bystander being coerced by Clayton, the court did not err in refusing to give the foreseeability instruction requested by appellant.

Appellant also argues the jury should have been instructed that she might be convicted of the crime of robbery contending the jury might have found that she aided or abetted Clayton in the robbery under 21-3205(1) but could not reasonably foresee that the murder might result as required by 21-3205(2).

Appellant's argument that an instruction on robbery was justified appears at first blush to be logical. Further analysis, however, discloses the fallacy in such an argument. Appellant was charged with murder and not with robbery. Unless robbery was a lesser included offense of that charged in the information, she could not be convicted of the crime of robbery. In *State v. Phillips,* 136 Kan. 407, 15 P.2d 408 (1932), the defendant was charged and tried for the crime of robbery. Defendant requested an instruction on the offense of accessory after the fact and the trial court refused to give such an instruction. This court stated:

"It is next contended that the court erred in failing to submit to the jury the offense of accessory after the fact. The offense of being an accessory after the fact is defined by the statute (R.S. 21-106), and is a separate and distinct offense. It is no part of any other offense nor is it any degree of any other offense. (*State v. Stoy,* 117 Kan. 124, 230 Pac. 335.) Consequently it was not included in the crime charged in the information. An instruction concerning an offense that is not charged in the information on which the defendant is being tried is improper, and it is not error for the court to refuse to give such instruction. (*State v. Hobl,* 108 Kan. 261, 194 Pac. 921.) If the evidence was insufficient to support the offense charged in the information or an offense included therein, the defendant should have been discharged. He cannot be tried for an offense not included in the information." p. 410.

See also *State v. Turner,* 193 Kan. 189, 200, 392 P.2d 863 (1964).

Robbery is not a lesser included offense of murder as the elements of the crime of robbery are not necessarily included in those of murder. *State v. Rueckert,* 221 Kan. 727, 733, 561 P.2d 850 (1977). Appellant was not charged with robbery, which is not a lesser included offense of murder, and therefore she could not have been convicted of robbery. The court properly instructed the jury on the elements of robbery as the underlying felony for the charge of murder.

In the present case, appellant maintained throughout that she was not a participant and not guilty of any crime. The evidence was otherwise. At one time during the evening, according to the bizarre set of facts pieced together from appellant's own statements and testimony, she was driving around with the victim, unharmed, locked in the trunk of the car while Clayton was driving off in the victim's truck. No attempt was made by appellant to escape from Clayton but instead, she followed him in the car. Subsequently, when all were together again, Reynolds was taken from the trunk and placed in the back seat of the car where a scuffle occurred between Reynolds and Clayton resulting in Reynolds being shot. Appellant and Clayton then abandoned Reynolds in the ditch, took his truck and other belongings and later sold the truck. Other evidence was equally convincing that appellant was more than an unwilling bystander fearful for her own safety. The trial court's refusal to give the requested instructions did not constitute error.

Appellant next contends that the trial court committed error in refusing to suppress the three statements she had given prior to trial. She does not contend that she was not advised of her rights nor does she contend that she did not understand them. Her

argument is that they should have been suppressed based upon the "totality of the circumstances." The trial court held appropriate hearings on each of the statements and found them to be admissible. We have carefully reviewed the record on all arguments raised by appellant in attacking the admissibility of her statements and find them to be without merit. *State v. Watkins,* 219 Kan. 81, 547 P.2d 810 (1976) and cases cited therein.

Next appellant asserts error in the admission in evidence of a box of .38 caliber bullets and a photograph thereof. The bullets were identified by Mrs. Reynolds as similar to ones possessed by the victim when he left Enid, Oklahoma. They were found in appellant's house along with other property definitely identified by Mrs. Reynolds as belonging to her deceased husband. The photograph showed the location of the bullets in defendant's home along with the other Reynolds property. It is not necessary that identification of physical objects be positively and indisputably established for them to be admissible. The lack of positive identification affects the weight of such evidence and not its admissibility. *State v. Martin,* 223 Kan. 78, 573 P.2d 576 (1977).

Finally, appellant argues the trial court erred in overruling her motion for acquittal at the close of the State's evidence. The applicable test to determine whether a judgment of acquittal should be entered at the close of the State's evidence is set out in *State v. Smolin,* 221 Kan. 149, 557 P.2d 1241 (1976) as quoted from *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 (1973):

" 'A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion.' (Syl. 3.)"

The evidence in this case clearly reflects that a reasonable mind could fairly conclude guilt beyond a reasonable doubt. The trial court did not err in overruling the motion for acquittal.

The judgment is affirmed.