STATE OF KANSAS, *Appellee,* v. GREGORY A. CHISM, *Appellant.*

No. 60,770

STATE OF KANSAS, *Appellee,* v. CARL J. WENZEL, *Appellant.*
(759 P.2d 105)

Opinion filed July 8, 1988.

*Jack Focht,* of Focht, Hughey, Hund & Calvert, of Wichita, argued the cause and was on the brief for appellant Chism.

*Charles A. O'Hara,* of O'Hara, O'Hara & Tousley, of Wichita, argued the cause and was on the brief for appellant Wenzel.

*Mona Furst,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with her on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is a criminal case wherein defendants Carl Wenzel and Gregory Chism appeal their jury convictions of first-degree felony murder, K.S.A. 21-3401, for which they were given life sentences.

Wenzel and Chism were together with their wives Penny Wenzel and Carlene Chism at a nightclub on August 24, 1985. They learned Ron Hawkins and his girlfriend, Teresa Stanhope, were throwing an after-hours party at a hotel and would not be returning home that night. Chism had been in Hawkins' home in the past and knew he kept cocaine and money hidden in a heating vent in one of the bedrooms. A little before 3:00 a.m., when the club closed, the appellants' wives rode home with a friend because both men were intoxicated.

Around 4:00 a.m., Anita Thomas, Hawkins' next door neighbor, heard sounds in Hawkins' yard as if someone were moving something large out of his house. She heard someone say, "Take

it over there. Go over there by the truck." She then heard a loud bang which awakened her husband, Michael, who believed the sound to be a gunshot. Michael Thomas called the police at that time.

The Thomases looked out their window and saw a window air conditioner laying by a truck. They also saw two men behind some cars struggling to obtain an object which they later learned was a rifle. They saw the taller of the men move the gun in an up-and-down motion as if he was beating something on the ground, while the other kicked and hit at something on the ground. Michael Thomas testified the two men stepped away from the cars several times and conferred between themselves before returning to the area where they continued to beat at something on the ground. The couple heard the taller man yell, "Give me that gun, let go of the gun, lay down, keep him down, stay down, you're not going to die. I'm going to blow your . . . balls off." They saw the taller man push the rifle towards the ground and heard another shot, muffled this time. The two men left in what looked like a white or a light-colored Monte Carlo. Both men were stumbling as if drunk. The taller of the men wore glasses. Chism, the taller of the two appellants, wears glasses and owned a white Oldsmobile.

An officer responding to the call saw two white males driving erratically in a light-colored Oldsmobile as he approached the scene. The police found Raymond Messerschmidt, who lived in the top apartment of Hawkins' house, lying dead on the ground. He had died from a gun blast through his groin. He had cocaine in his system as well as on his person.

Laying in the yard were the air conditioner from Hawkins' bedroom window and the stock of a semi-automatic Mini-Ruger 14 rifle, later determined to be the deceased's. Some of the wounds on Messerschmidt, who had been severely beaten, matched the butt of the rifle.

The two appellants asked their wives to provide an alibi for their whereabouts during the critical hours of the morning. They admitted killing Messerschmidt, but said it had been accidental. They said they went to Hawkins' house to steal money and drugs from the heating vent when they were interrupted by Messerschmidt, who had come downstairs and around the corner of the house with a rifle. They tackled him and tried to get the rifle

away from him, but he was tremendously strong and would not give it up. They said they had been unarmed on their arrival at Hawkins' house and had thrown the remains of Messerschmidt's rifle in a creek before coming home.

The women first gave the prepared alibi stories to the police that appellants had returned home soon after their own departure from the nightclub. The women told the truth, however, after being told charges could be brought against them for aiding and abetting. Carlene was represented by an attorney when she made her statement to the State; Penny had received the advice of an attorney earlier.

Chism and Wenzel were charged as codefendants with first-degree murder in the alternatives of premeditated murder or felony murder while in the perpetration of the crime of burglary or attempted burglary, K.S.A. 21-3401. The appellants stuck to their original alibi stories to the police and did not testify at trial. They were tried together but filed separate appeals. The two appeals are consolidated in this opinion.

Appellants' first issue on appeal is whether the trial court erred in ruling as a matter of law, for the purposes of certain instructions, that Chism and Wenzel had committed, or attempted to commit, a felony and were within the res gestae of the crime when the fight began.

Appellants argue the trial court erred in failing to instruct on the lesser included offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter. Wenzel also protests the court's failure to give a requested instruction on misdemeanor theft. A trial court generally has the duty to instruct on the full range of lesser included offenses. Where the commission of a felony results in a death, however, the normal rule on lesser included offense instructions does not apply. *State v. Rueckert,* 221 Kan. 727, 731, 561 P.2d 850 (1977). The felonious conduct in such a case is held to supply the elements of premeditation and intent that are otherwise required to establish first-degree murder. *State v. Hoang,* 243 Kan. 40, 755 P.2d 7 (1988). If the undisputed evidence is not weak or inconclusive, but instead would convince a reasonable person that a felony had been committed, instructions on lesser offenses are not required. *State v. Marks,* 226 Kan. 704,713, 602 P.2d 1344 (1979).

The State's evidence showing an attempted burglary was in

progress when Messerschmidt was shot and killed consisted of the eyewitness testimony of the Thomases, and the testimony of Teresa Stanhope, Ron Hawkins, and the appellants' wives. Appellants argue their wives were coerced into giving their first statements against them. They also contend their wives' testimony was suspect because they were not interrogated until many months after the crime, during which they had heard different theories of the crime from many people. Appellants argue the testimony of Teresa Stanhope and Ron Hawkins was suspect because they were granted immunity by the State. They also argue *everyone's* testimony was suspect because a reward was offered for information leading to the arrest and conviction of Messerschmidt's killer.

There was clear, uncontradicted evidence the appellants were in the process of burglary when the death occurred. Appellant's attack on the witnesses' credibility does not, under the circumstances of this case, render the undisputed evidence against the defendants weak or inconclusive. See *State v. Armstrong,* 240 Kan. 446, 460, 731 P.2d 249 (1987). The evidence would convince a reasonable person a felony had been committed; thus, the court did not err in failing to instruct on lesser included offenses.

The court did not err in refusing to instruct on misdemeanor theft, as appellants were charged only with murder. Theft is not a lesser included offense of murder. The appellants could not have been properly convicted of theft. *State v. Giddings,* 226 Kan. 110, 113-14, 595 P.2d 1115 (1979).

The court ruled the appellants were either guilty of the underlying felony or, if the jury found the witnesses' testimony not to be credible, of no crime at all. Appellants argue there was a reasonable doubt they had the specific intent required to commit burglary because the evidence was uncontradicted that they had been drinking heavily. The court gave instructions on intoxication as affecting specific intent and the elements of burglary and attempted burglary which require the specific intent to commit a theft within the house. The jury was thus allowed to consider whether the appellants were not guilty of burglary because they lacked specific intent. Appellants' argument is therefore without merit.

Appellants also argue the court erred in summarily finding the

death occurred within the res gestae of the felony and thus refusing their instructions on time, distance, and the causal relationship between the underlying felony and the killing. They argue the jury could have found they had abandoned their felonious purpose when frightened by Messerschmidt. The facts show this argument has no merit. The attempt statute, K.S.A. 1987 Supp. 21-3301, specifically states an attempt has been committed when a person intentionally makes an overt act "but . . . is prevented or intercepted in executing such crime." The evidence was conclusive the death occurred within the res gestae of attempted burglary. Appellants were on Hawkins' property at night, contraband was laying close by, and Messerschmidt was killed at this same location. Thus, the court did not err in finding the issue was not one for the jury. See *State v. Rider, Edens & Lemons*, 229 Kan. 394, 399-400, 625 P.2d 425 (1981), where the evidence was not weak or inconclusive that defendants shot a man who appeared to be armed and who pursued them for some unknown reason 15 minutes into their getaway from a robbery. We held the shooting was within the res gestae of the underlying felony as a matter of law, and the question need not be determined by a jury. The court thus did not err in failing to instruct on self-defense and lesser included offenses. The time, distance, and causal relationship between the underlying felony and the killing are stronger in the case at bar. Messerschmidt's interception of the appellants was clearly caused by their attempted felony, and his death occurred shortly afterwards in his and Hawkins' yard.

Appellants also argue the court erred in failing to give the instructions because the jury could have found the appellants had not yet reached the overt act required to be guilty of felony murder. They contend the court erred in instructing the jury that to establish the crime of attempted burglary, the State must prove "[t]hat the defendant(s) performed an act toward the commission of the crime of Burglary, to-wit: enter the backyard of 2410 North *[sic]* Douglas, Wichita, Kansas . . . with the intent to commit the crime of Burglary." In its bill of particulars, the State had claimed the appellants had committed the underlying felony of burglary or attempted burglary by removing the air conditioner.

It is necessary to show both intent and an overt act toward the

commission of the crime to prove an attempt. K.S.A. 1987 Supp. 21-3301; *State v. Gobin,* 216 Kan. 278, 531 P.2d 16 (1975). There is no definitive rule as to what constitutes an overt act; each case depends on the inferences a jury may reasonably draw from the facts. It must be shown the defendant took a step beyond mere preparation so that some appreciable fragment of the crime was committed. In some cases, the intent to commit the felony is so clearly shown by other evidence that it is enough that the defendant arrived at the scene at which he planned for the crime to occur. See *State v. Garner,* 237 Kan. 227, 238-40, 699 P.2d 468 (1985). Under the circumstances of the case at bar, the jury could have reasonably found the overt act had been committed when the appellants entered the victim's backyard. The determination of the existence of an overt act is a jury function, however, and the court erred in taking it from them. *State v. Sullivan & Sullivan,* 224 Kan. 110, 125-26, 578 P.2d 1108 (1978). In light of the evidence, however, the error was harmless as it did not mislead the jury when appellants' instructions and evidence are considered as a whole. All evidence pointing to the appellants' trespass also pointed to them removing the air conditioner. There was absolutely no evidence from which it could be inferred the appellants were intercepted before they removed Hawkins' air conditioner in preparation for entering his house for purposes of theft.

Appellants next argue the jury should have been instructed on foreseeability, contending it was a question of fact whether they could have reasonably foreseen a death would occur, as they were not armed. Whether a felony is inherently dangerous is to be determined in the abstract, rather than by the circumstances in a particular case. *State v. Underwood,* 228 Kan. 294, Syl. ¶ 5, 615 P.2d 153 (1980). We have previously held burglary is a forcible felony inherently dangerous to human life because it necessarily involves potential confrontation. K.S.A. 21-3110(8); *Smith v. State,* 8 Kan. App. 2d 684, 688, 666 P.2d 730 (1983). Where the underlying felony is one inherently dangerous to human life, the foreseeability requirement is established as a matter of law. *State v. Giddings,* 226 Kan. at 112-13. The argument is without merit.

Wenzel separately argues the court erred in refusing his instruction that one who was only an aider and abettor must have

been able to reasonably foresee that a death could occur. Wenzel was equally responsible for the conduct of Chism when he intentionally aided Chism in the commission of the attempted burglary. See *State v. Sullivan & Sullivan,* 224 Kan. at 119. It is irrelevant which appellant actually shot Messerschmidt, as all participants to an underlying felony are principals to felony murder when death occurs. *State v. Hoang,* 243 Kan. at 42. The rules of felony murder thus apply equally to both appellants. See *State v. Giddings,* 226 Kan. 110. We find no error.

The appellants argue the court erred in removing the issues of self-defense and accident from the jury's consideration by refusing both their instruction on self-defense, and numerous instructions pertaining to Messerschmidt's presumably unlawful acts. A victim's actions in trying to stop a felony are irrelevant. Self-defense or accident are not defenses to felony murder. It is the purpose of the felony-murder rule to prevent deaths from these causes. *State v. Hoang,* 243 Kan. at 42; *State v. Underwood,* 228 Kan. 294.

A separate issue is whether, even if the court was correct in refusing the appellants' instructions under felony-murder rules, it erred in not giving the instructions because the appellants were charged with premeditated murder as an alternative to felony murder. Appellants argue, because the State refused to elect, the premeditated murder charge should be considered entirely separate from the felony. This procedure was followed by the trial court in *State v. Strauch,* 239 Kan. 203, 218, 718 P.2d 613 (1986), wherein the court gave lesser included instructions on the alternative charge of premeditated murder (of which the defendant was convicted), but refused to instruct on lesser offenses under the felony-murder charge because evidence of the underlying felony was not weak or inconclusive. We affirmed.

The State is not required to elect between premeditated and felony murder. The statute establishes but one offense, murder in the first-degree, and only provides alternative methods of *proving* the required elements of premeditation and intent. The first is by direct proof, the second by proving the underlying felony. *State v. Wise,* 237 Kan. 117, 120-21, 697 P.2d 1295 (1985). We held in *Wise* the court did not err in failing to instruct on lesser included offenses where the defendant was charged with both premeditated and felony murder. However, in that case, the

defendant did not request the instructions and relied on an alibi defense. See *State v. Hutton,* 232 Kan. 545.

In *State v. Sullivan & Sullivan,* 224 Kan. 110, the defendants were charged with premeditated and felony murder. The evidence showed one of the defendants was standing some distance from a farmhouse in preparation for burglarizing it, although he denied this purpose. He shot and killed a man who came out of the house, but said it was accidental, that he had meant to shoot a dog in self-defense. We held a determination of whether instructions on lesser included offenses should have been given depended on whether the evidence would have compelled the jury to find the defendant had committed an overt act constituting attempted burglary. The charge of premeditated murder did not change the determination to be made. We held the evidence was not so compelling; thus, the court erred in failing to give lesser included offense instructions. In *Sullivan & Sullivan,* there was no evidence the defendant had done more than trespass before the shooting occurred. He was still a long distance from the house. In the case at bar, the evidence is uncontroverted that appellants had removed the air conditioner from the room they believed contained a cache of drugs and money before they were intercepted. We hold the evidence of the underlying felony was so compelling that the court did not err in failing to instruct on lesser included offenses.

The third issue is whether the trial court erred in failing to declare a mistrial or admonish the jury because of prosecutorial misconduct during final argument.

The prosecutor commented that Carlene, Chism's wife, obviously did not want to repeat at trial certain things she had previously told the State; for example, that the appellants "were going after money and drugs." Defense counsel objected this was outside the evidence. The court replied it did not think it was, but admonished the prosecutor to stay within the evidence. The court then granted defense counsel's request to approach the bench for argument.

Penny Wenzel's pretrial statement had been that one of the appellants said they went to Hawkins' house to steal money and drugs. When the State asked Carlene, before trial, if Chism made this statement, she said she did not remember who made the statement, although she remembered it being made. She then added she did not remember drugs being mentioned.

At trial, Penny gave the same testimony and Carlene testified she could not remember who had made the statement about the appellants trying to steal money and drugs. She did remember that one of the appellants had admitted they were trying to get into the house for some purpose.

Defense counsel thus was technically correct that Carlene had not said the appellants "were going after money and drugs." The trial judge should not have commented on his memory of the testimony, as it was not necessary for him to do so. See *State v. Starbuck,* 239 Kan. 132, 134, 715 P.2d 1291 (1986).

In closing argument, the stating of a fact contrary to the evidence is clearly improper. *State v. Bradford,* 219 Kan. 336, 339-40, 548 P.2d 812 (1976). In deciding whether prosecutorial misconduct requires reversal, an appellate court determines whether there was little or no likelihood the error changed the result of the trial. *State v. Thompson,* 221 Kan. 176, 183, 558 P.2d 93 (1976). In view of the overwhelming amount of other evidence that the appellants were in the process of burglarizing the house, the error does not affect the substantial rights of the parties and is harmless. See K.S.A. 60-261.

Appellant Wenzel cites an additional objection to the prosecutor's closing argument. In countering appellants' theory that Stanhope testified in hopes of reward money, the prosecutor stated, "It's a natural reaction to want to help the police. Those types of things shock the conscience of any responsible member of our community." The court then granted defense counsel's request to approach the bench. It denied counsel's request for mistrial, but instructed the jury to disregard the comments. The prosecutor later told the jury at the end of his argument, "You are the conscience of this community." The court again granted a bench conference and denied appellant's motion for a mistrial. Instead of striking the statements, however, it merely instructed the jury it was to consider only the evidence, and comments by counsel during closing argument were not evidence.

Improper remarks made in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and deny him a fair trial. Under the facts of the case at bar, the appellants have failed to meet their burden of showing such prejudice.

The fourth issue is whether the conduct and comments of the trial court denied the appellants a fair trial. A trial court has broad discretion in controlling the proceedings at trial. *State v. Hamilton,* 240 Kan. 539, 541-45, 731 P.2d 863 (1987). Allegations of judicial misconduct must be decided on the particular facts and circumstances of each case. Reversal is required only when the appellant has shown the conduct prejudiced his substantial rights. *State v. Kendig,* 233 Kan. 890, 896, 666 P.2d 684 (1983). We have carefully reviewed the record and find nothing which constitutes reversible error in the court's conduct. The trial judge used admirable restraint even though defense counsel gave him every opportunity to err. There were times when it was appropriate for the court to halt the proceedings to clear up matters which had become confused. The court tried to handle such matters outside the hearing of the jury. The judge was, with few exceptions, quite agreeable to all requests to confer at the bench or to excuse the jury. The court clearly instructed the jury it should disregard any comments it might hear the court make to counsel, as the court had no opinion of, and meant to make no indication whatsoever of, the merits of the case for either side. This issue is without merit.

The final, related issue is whether the court erred in instructing the jury that it is proper for the State to grant immunity to prospective witnesses, but it is for the jury to decide the credibility and weight to be given to the testimony. The appellants argue the instruction was an improper comment on the propriety of the State's action. The instruction was a correct statement of the law. *State v. Sullivan & Sullivan,* 224 Kan. at 123. Defense counsel challenged the credibility of Stanhope and Hawkins at trial because they had been granted immunity. The court properly allowed this tactic, but informed counsel during a bench conference it was concerned the questioning had gone beyond impeachment of credibility and into the area of asking one witness about her knowledge of the law concerning immunity. Considering the circumstances of defense counsel's emphasis, the court acted within its discretion and properly and fairly stated the law as it applied to the facts in the case. *State v. Ferguson, Washington & Tucker,* 228 Kan. 522, 527-28, 618 P.2d 1186 (1980).

The judgment of the trial court is affirmed.

PRAGER, C.J., and LOCKETT and ALLEGRUCCI, JJ., dissenting.