IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,483

STATE OF KANSAS,
*Appellee*,

v.

ARCHIE L. ROBINSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

If the State charges felony murder in a case in which several individuals commit the inherently dangerous felony, it is irrelevant which individual shot the victim. All participants in an underlying felony are principals to felony murder when a death occurs during the commission of, attempt to commit, or flight from any inherently dangerous felony. As a result, the State does not have to prove who committed the act that resulted in a death—e.g., fired the gun or struck the lethal blow.

2.

By operation of the felony-murder statute, a complaint or information stating a defendant killed a victim during the commission of an inherently dangerous felony does not necessarily charge that a defendant personally committed the act that resulted in a death.

3.

The trial court does not err in instructing the jury on the elements of felony murder by stating the defendant or another killed the victim even though the complaint or information stated the defendant killed the victim. The law considers all who commit an

1

inherently dangerous felony to be a killer if the fatal blow occurs during the commission of, attempt to commit, or flight from any inherently dangerous felony, and the instruction informs the jury a defendant may be guilty whether the defendant or another committed the fatal act.

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed June 29, 2018. Affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kate Duncan Butler*, assistant district attorney, argued the cause, and *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  Archie Robinson appeals his conviction for felony murder. He argues three different grounds for reversal:  (1) Insufficient evidence supports his conviction because the State charged him as the killer, but the trial evidence established his cousin fired the fatal shot; (2) the felony-murder instruction impermissibly broadened the information filed by the State against him; and (3) the felony-murder elements instruction did not conform to the evidence presented at trial. We reject Robinson's arguments and affirm.

FACTS AND PROCEDURAL BACKGROUND

In the early morning hours of March 8, 2014, Cousins Dustin Walker and Archie Robinson broke into Marilyn Howard's residence, where she lived with two sons and a grandson. One of her sons, Patrick Roberts, sold marijuana from his bedroom, and the

2

cousins went directly to his room once inside the residence. According to the testimony of the surviving residents, one of the cousins demanded, "Where is it?" Roberts responded, "I don't know what you are talking about." One of the cousins then shot Roberts, who died from his wounds. Roberts' brother struggled with the shooter before the gun went off a second time. Evidence at trial pointed to Walker as the shooter.

During the altercation, Howard called 911. The first law enforcement officer arrived at the apartment a little after 3 a.m., by which time both Robinson and his cousin had fled. Roberts' brother and son told the officer the shooter wore a black shirt and the second man wore light clothes. Shortly after, officers began searching the area and found Walker and Robinson, who had separated, Walker wore a black jacket and jeans, and Robinson wore a cream-colored shirt and khaki pants.

Additional evidence introduced at trial implicated Robinson and Walker. Surveillance video from a nearby gas station showed the two men around 2:45 a.m., minutes before the shooting. Both men wore the same clothes at the time of their arrests. Stains on Robinson's pants and shirt matched Roberts' blood. Robinson was not wearing shoes when arrested, but officers found a size 9 shoe at the crime scene that did not belong to the residents. An officer found a matching shoe, stained with blood that matched Roberts', on the grounds of a nearby apartment complex. Robinson requested size 9 jail footwear during his police interview. The gun, which the intruders left at the scene, belonged to the mother of Walker's children. Finally, at trial, the mother of Robinson's children testified she asked Robinson why he did it and he said he "was being greedy and he said he fucked up."

The jury convicted Robinson of both charges—aggravated burglary and felony murder. The court sentenced Robinson to a controlling hard 20 life sentence. Robinson

3

appeals. This court has jurisdiction under K.S.A. 2016 Supp. 22-3601(b) (off-grid crime).

ANALYSIS

Each of Robinson's issues rests on application of Kansas law about felony murder. The Kansas Legislature defines felony murder as "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 2016 Supp. 21-5402. The Legislature created a list of "inherently dangerous" felonies. K.S.A. 2016 Supp. 21-5402. That list includes aggravated burglary, which the jury determined Robinson committed.

Significant to Robinson's arguments, if the State charges felony murder in a case in which several individuals commit the inherently dangerous felony, "[i]t is irrelevant which [individual] actually shot [the victim], as all participants to an underlying felony are principals to felony murder when death occurs." (Emphasis added.) *State v. Chism*, 243 Kan. 484, 491, 759 P.2d 105 (1988); see *State v. Dupree*, 304 Kan. 377, 393-94, 373 P.3d 811 (2016). This means "'all the participants . . . [are] equally guilty of the felony murder, regardless of who fired the fatal shot.'" *Dupree*, 304 Kan. at 393. As a result, the State need not prove the identity of the triggerman because that question lacks relevance. See *State v. Littlejohn*, 260 Kan. 821, 822, 925 P.2d 839 (1996); *State v. Thomas*, 239 Kan. 457, 462, 720 P.2d 1059 (1986); *State v. Myrick & Nelms*, 228 Kan. 406, 416, 616 P.2d 1066 (1980).

With these principles in mind, we turn to the specifics of Robinson's issues.

4

ISSUE 1: *Sufficient evidence supports Robinson's conviction of felony murder.*

First, Robinson raises a sufficiency of evidence issue. He concedes the State "likely" proved he committed felony murder. That said, he argues the State accused him of being the shooter and, because it did so, it had to prove that fact but failed. His argument has aspects suggesting the State filed a defective information. But he has phrased the question as one relating to the sufficiency of the evidence. In that regard, we review all the evidence in a light most favorable to the prosecution and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. In making that determination, we do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. See, e.g., *State v. Woods*, 301 Kan. 852, 874, 348 P.3d 583 (2015).

The amended information charged:

"That on or about the 8th day of March, 2014, in Douglas County, Kansas, one Archie L Robinson, *did then and there unlawfully and feloniously kill a human being*, to-wit: Patrick D. Roberts, in the commission of, attempt to commit, or flight from any inherently dangerous felony, to-wit: Aggravated burglary, as defined in subsection (b) of K.S.A. 21-5807, and amendments thereto, all in violation of K.S.A. 21-5402(a)(2). (Murder in the First Degree, Off Grid/Person/Felony)." (Emphasis added.)

Robinson argues the emphasized language identified him as the triggerman and, in this way, the amended information acted like a bill of particulars. If a court orders the prosecutor to provide a bill of particulars, the State's trial "shall be confined to the particulars of the bill." See K.S.A. 22-3201(f). We conclude, however, that Robinson's arguments confuse the roles of the information and a bill of particulars.

5

An information "shall be a plain and concise written statement of the essential facts constituting the crime charged." K.S.A. 22-3201. This means the State must "allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant." *State v. Dunn*, 304 Kan. 773, 811, 375 P.2d 332 (2016).

Thus, the State had to state the essential facts constituting felony murder, which "is the killing of a human being" in the commission of an inherently dangerous felony. K.S.A. 2016 Supp. 21-5402. The statute does not restrict its applicability to the one who commits the fatal act. Instead, the law considers Robinson to have "kill[ed] a human being"—the words used in the information—because he participated in the aggravated burglary, not because he pulled the trigger. See *Dupree,* 304 Kan. 377, 393-94; *Chism*, 243 Kan. at 491. The State merely alleged the essential fact that Robinson acted as a principal in the crime being committed when the bullet hit Roberts. After stating this essential fact, the State did not need to identify the triggerman, an irrelevant fact. In fact, "'the information need not set forth all the specific evidentiary facts relied on to sustain the charge.'" *State v. Wright*, 259 Kan. 117, 122, 911 P.2d 166 (1996) (quoting *State v. Bird*, 238 Kan. 160, 166, 708 P.2d 946 [1985]).

In contrast, a bill of particulars informs a defendant of the evidence against him or her and, at trial, the State cannot deviate from those particulars. K.S.A. 22-3201(f); *State v. Bischoff*, 281 Kan. 195, 207, 131 P.3d 531 (2006). Here, had the State filed a bill of particulars and identified Walker as the triggerman, it could not have introduced evidence that Robinson fired the fatal shot. But the court did not order the State to file a bill of particulars. Moreover, proof that Walker fired the shot did not prove that Robinson did not cause the killing of Roberts under the felony-murder statute.

The trial record provides sufficient evidence that Robinson committed felony murder—that is, he participated in the crime of an aggravated burglary during which

6

Roberts was killed. Whether he was the triggerman bears no relevance to that determination. As a result, the information stating Robinson killed a victim during the commission of an inherently dangerous felony does not necessarily allege Robinson fired the fatal shot.

We have no hesitation in concluding a rational factfinder could have found Robinson guilty of felony murder beyond a reasonable doubt, which is the standard we use for determining the sufficiency of the evidence. See *Woods*, 301 Kan. at 874.

ISSUE 2: *The felony-murder elements instruction was not overly broad.*

Next, Robinson argues the felony-murder elements instruction impermissibly broadened the complaint by instructing the jury that he "or another" killed Roberts. See *State v. Trautloff,* 289 Kan. 793, 802, 217 P.3d 15 (2009) ("A jury instruction on the elements of the crime that is broader than the complaint charging the crime is erroneous."). As a result, Robinson argues the instruction was not legally appropriate. See *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012) (delineating steps in jury instruction analysis and specifying the steps of finding an instruction to be legally and factually appropriate). At oral argument, Robinson's appellate counsel conceded that his first two issues rise or fall together; in other words, because we have rejected his first argument, he also loses on this issue.

In essence, the instruction simply explained the elements of felony murder and the principles incorporated in those elements: The State need only prove one of the participants in an inherently dangerous felony killed Roberts during the commission of an inherently dangerous felony and that Robinson participated in the commission of that felony with the necessary mental culpability. It need not prove who pulled the trigger,

7

and the instruction essentially informs the jurors they do not have to determine whether Robinson or another principal pulled the trigger.

Here, the instruction using the words "the defendant or another" did not broaden the information beyond the crime charged, and it was legally appropriate.

ISSUE 3: *We find any alleged error in the felony-murder elements instruction harmless.*

At trial, Robinson objected to the use of the words "the defendant or another" in the instruction as factually inappropriate because the evidence proved Walker fired the gun. See *Plummer*, 295 Kan. at 163. On appeal, Robinson also argues the felony-murder instruction did not conform to the evidence because it allowed the jury to convict him even though the evidence established he did not pull the trigger.

In the State's brief, it conceded the instruction's factual inappropriateness, stating "the State acknowledges that, from a factual standpoint, the evidence presented at trial does not support including Robinson's name in the elements instruction." The State then focused on whether the error was harmless. At oral argument, however, the State acknowledged its concession may have been hasty and substantively inconsistent with its arguments on the first and second issues. Even so, we assume without deciding that Robinson established factual error in the jury instruction and turn our analysis to whether any error was harmless. See *Plummer*, 295 Kan. at 163 (after an appellate court determines a trial court erred in giving an erroneous, objected-to jury instruction an "appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *Ward* [*v. State*, 292 Kan. 541, 256 P.3d 801 (2011)]").

As for the harmless error inquiry, Robinson and the State dispute which harmless error standard applies: the constitutional or statutory harmless error standard. We assume

8

without deciding that Robinson correctly argues the constitutional harmless error standard applies. Under this standard, we must determine whether the State has proved there is "no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569-70.

As we have discussed, the fact question raised by Robinson does not matter; the jury did not have to determine who fired the fatal shot as long as it was convinced beyond a reasonable doubt one of them had done so during the aggravated burglary. The instruction explained this principle—i.e, that the jury need not determine who shot Roberts. The outcome would have been the same whether Robinson or Walker fired the fatal shot. Thus, we conclude no reasonable possibility exists that the language of the instruction changed the jury's verdict.

Affirmed.